UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STACEY N.S., | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | No. 3:22-cv-713 (SDV) |
| | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| *Defendant*. | : | |

## RULING ON PENDING MOTIONS

Plaintiff brings this administrative appeal from the decision of the Commissioner of the Social Security Administration denying her applications for disability insurance benefits and supplemental security income. For the reasons below, plaintiff's Motion to Reverse the Decision of the Commissioner (ECF 15) is DENIED, and the Commissioner's Motion to Affirm (ECF 18) is GRANTED.

### A. LEGAL STANDARDS

#### 1. Disability and eligibility

A claimant is disabled under the Social Security Act if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be eligible for Title II disability insurance benefits, the claimant must establish the onset of disability during the period in which he or she was insured for disability benefits based on quarters of qualifying work. 42 U.S.C. § 423; *see also Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989). Alternatively, Title XVI provides for supplemental security income benefits to

claimants who are indigent and disabled without reference to prior work dates.  *See Bowen v. City of New York*, 476 U.S. 467, 470 (1986) (citing 42 U.S.C. § 1381 *et seq.*).

### 2. Commissioner's five-step review

The Commissioner of Social Security is authorized to make findings of fact and decisions on disability applications, *see* 42 U.S.C. §§ 405(b)(1), 1383(c)(1)(A), in accordance with the five-step sequential evaluation process provided in 20 C.F.R. §§ 404.1520, 416.920.  (1) First, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity.  (2) If not, the Commissioner determines whether the claimant has a medically determinable impairment or combination of impairments that are "severe," meaning that it "significantly limits" the claimant's physical or mental ability to do basic work activities.  (3) If the claimant has a severe impairment or combination of impairments, the Commissioner evaluates whether, based solely on the medical evidence, the claimant has an impairment that "meets or equals" an impairment listed in Appendix 1, Subpart P, No. 4 of the regulations (the "Listings") and that either is expected to result in death or has lasted or will last for at least 12 months. [1]  If so, the claimant is disabled.  (4) If not, the Commissioner determines whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform his or her past work. [2]  (5) If not, the Commissioner determines whether there is other work in the national economy which the claimant can perform in light of his or her RFC, age, education, and work experience.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the

---

[1] *See* 20 C.F.R. §§ 404.1509, 416.909 (durational requirement).

[2] Residual functional capacity is the most a claimant can do in a work setting despite his or her limitations.  20 C.F.R. §§ 404.1545, 416.945.

burden of proof on the first four steps, and the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

The Commissioner's authority to make these findings and decisions is delegated to an administrative law judge ("ALJ"). *See* 20 C.F.R. §§ 404.929, 416.1429.  A claimant may request review of an ALJ's decision by the Appeals Council. *See* 20 C.F.R. §§ 404.967, 416.1467.  If the Appeals Council declines review or affirms the ALJ's decision, the claimant may appeal to the United States District Court.  42 U.S.C § 405(g).

### 3.  Court's review on appeal

A district court reviewing the Commissioner's final decision is performing an appellate function, *see Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981), and has the power to affirm, modify, or reverse the Commissioner's decision based on its review of the briefs and the administrative record.  *See* 42 U.S.C § 405(g).  "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).

## B.  BACKGROUND

### 1.  Procedural History

In December 2019, plaintiff filed applications for disability insurance benefits and supplemental security income alleging a disability onset date of November 13, 2019.  *See* R. 187-202.  The claim was denied at the initial and reconsideration levels, and plaintiff requested a hearing.  R. 109, 114, 119, 122, 123, 127.  On March 17, 2021, ALJ Matthew Kuperstein conducted a hearing at which both the plaintiff and a vocational expert, Victor Alberigi, testified.  R. 33-70.  On April 22, 2021, the ALJ issued a written decision denying plaintiff's claim.  R. 10-

19.  Plaintiff's request for review was denied by the Appeals Council, R. 1-5, and plaintiff filed this action on May 27, 2022.

### 2.  Factual History

In her 2019 applications, plaintiff listed her impairments as obesity, gastroesophageal reflux disease (GERD), gastritis, and knee problems.  R. 188, 238.  At the 2021 hearing, plaintiff's counsel described her impairments as "all over body pain," chronic pain syndrome in her knee with osteoarthritis, and chronic low back pain with kyphosis and degenerative disc disease in the thoracic spine, which is "exacerbated by her BMI."  R. 43.

#### a.  Plaintiff's hearing testimony

Plaintiff testified that she has a high school education and one year of college.  R. 50. She previously worked as a customer service representative and at a deli counter in a grocery store.  R. 57.  Regarding her impairments, plaintiff testified as follows.  She stopped working at the deli counter because of pain that makes it "hard . . . to stand for a long period of time."  R. 44.  She requires a cane to walk, has trouble going up the stairs, struggles to stand for long periods of time (10 minutes on a bad day; 45 minutes on a good day), and experiences pain throughout her back, arms, legs, and feet.  R. 44-46, 51.  It is difficult for her to sit for more than an hour at a time. R.  47.  The pain wakes her up in the middle of the night and typically is about a 3 to 5 out of 10 once she takes her medication.  R. 51-52.  She sometimes struggles to get out of bed, bathe, and dress herself due to this pain.  Her companion helps her shower and dress herself much of the time and performs many of the household tasks (such as sweeping, dusting, and laundry).  R. 52-54.   She can cook for herself on "good days" but usually her companion cooks.  R. 53.

### b.  Medical signs

The administrative record contains 242 pages of medical records.  Studies in response to plaintiff's complaints of epigastric pain, nausea, and vomiting – including a 2016 MRI, September 2019 CT scan (R. 360, 369-370), October 2019 MRI (R. 367-369), November 2019 CT scan (R. 408-409), and November 2019 endoscopy/EGD (R. 325, 340) – detected no obvious cause.  R. 436, 443, 449.  Plaintiff was also referred for several imaging studies in response to her complaints of bilateral leg pain, including a left knee x-ray dated September 13, 2019 showing "moderate" tricompartmental osteoarthritis (R. 336), a venous ultrasound dated September 13, 2019 showing no evidence of lower extremity deep vein thrombosis (R. 338), a thoracic spine x-ray dated December 2, 2020 showing "slight" exaggerated thoracic kyphosis and likely degenerative disc disease based on "minimal" anterior wedging of T9 and T10 and loss of disc space height and spurring at T7-T11 but "otherwise normal" alignment (R. 533), and a cervical spine x-ray on December 2, 2020 that was mostly "normal" with some loss of disc space height and spurring at C5-C6 compatible with disc degeneration, "minimal" ventral osteophytic lipping at C6-C7, and "suggestion" of "mild" bilateral uncovertebral spondylosis (R. 553).  Additionally, in response to plaintiff's complaint of chronic right arm pain, she was referred for a right shoulder x-ray on December 2, 2020, which showed no right shoulder arthritis (R. 532), and a March 18, 2021 neurological exam revealed a positive Tinel's sign (a sensation of pins and needles upon tapping over the nerve) on the right side with pain and numbness corresponding to the C5-C6 nerve distribution (R. 560).  The medical records from primary care physician Dr. Kumar and others consistently note obesity post-gastric bypass surgery with a BMI that fluctuated between 48.98 in 2019 (R. 354) and 30.66 in 2021 (R. 538).

At the neurological exam in March 2021, plaintiff was observed as having a "Waddling gait due to obesity, low back and bilateral knee pain, stable with a cane."  R. 561.

      **c.   Contemporaneous reports and assessments**

From August 2019 through July 2020, plaintiff sought treatment for recurrent abdominal pain, nausea, and vomiting, which improved with medication compliance.  R. 351-425, 432-465. At appointments with primary care physician Dr. Kumar from October 2015 through February 2021, plaintiff complained of knee pain ranging from a 4 to 8/10 but she sometimes reported pain of 0/10 (*see* R. 513, 519) and her motor strength in her upper and lower extremities was normal. *See* R. 508-519, 550-552.  From August 2020 through January 2022, plaintiff obtained pain management treatment for back and knee pain.  R. 468-505.  At specific visits, she variously reported pain intensity between 3 to 6/10 with medication and 7 to 10/10 without.  *See* R. 468-502; *but see* R. 477 (reporting 10/10 with or without medication).  She also reported physical limitations in getting dressed, bathing, grocery shopping, walking, and sleeping, yet stable with activities of daily living (ADLs), including being able to drive, cook, and shop.  She was consistently assessed as having 4/5 strength with limited range of motion and tenderness in both knees.  R. 479-505.  She consistently reported good overall quality of life and joint mobility, with pain but no weakness in her lower extremities, "good pain control with improved functional status [and] improved ADLs."  *See id.*; *but see* R. 502 ("fair" joint mobility).  Her functional status of "some limitation" with medication improved to "working" as of December 2020 and early 2021.  *See id.*  At a neurological consult in March 2021, plaintiff reported episodic right arm pain that she characterized as "annoying" but "not significantly disruptive [or] disabling." R. 561.  The neurologist assessed some areas of 4/5 muscle strength in her right arm with some pain and numbness corresponding to the C5-C6 nerve distribution and recommended an EMG

and therapy, R. 559-560, but that is the last treatment note in the record.  Notably, the neurologist also assessed the strength in plaintiff's lower extremities as 5/5 across the board in March 2021, R. 559, just one month before the ALJ's decision.

### 3.  The ALJ's Decision

In the April 27, 2021, decision, the ALJ followed the five-step sequential evaluation to determine whether plaintiff was disabled under the Social Security Act.  At Step 1, the ALJ found that the plaintiff has not engaged in substantial gainful activity since the alleged onset date.  R. 13.  At Step 2, the ALJ found that the plaintiff has the following severe impairments: osteoarthrosis bilateral knees, degenerative disc disease of the cervical and thoracic spine with kyphosis, and obesity; however, he found that GERD and gastritis were not severe impairments. R. 13.  At Step 3, the ALJ found that these impairments do not meet or medically equal a listed impairment.  R. 13-14.  At Step 4, the ALJ found that the plaintiff had the residual functional capacity

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she is further limited to: lifting and/or carrying 10 pounds occasionally and less than 10 pounds frequently; standing and/or walking with normal breaks for a total of 2 hours in an 8-hour workday; require use of a cane for distance walking of more than 10 feet at a time, but when doing so able to carry papers or folders in the free hand; sitting with normal breaks for a total of 6 hours in an 8-hour workday; occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, or crawling; never climbing of ladders, ropes, or scaffolds.

R. 13.  Based on the vocational expert's testimony, the ALJ found that the plaintiff was capable of performing past relevant work as a customer service representative, and so was not disabled within the meaning of the Social Security Act from the onset date of November 13, 2019 to the date of decision, April 27, 2021.  R. 18-19.

7

## C. DISCUSSION

Plaintiff's only explicit claim is that the ALJ's RFC determination was not supported by substantial evidence, which is a claim of factual error. However, part of her argument is that the ALJ failed to properly evaluate plaintiff's subjective evidence of her symptoms in accordance with applicable rules and regulations, which is a claim of legal error. The Court will examine both claims.

### 1. No legal error in evaluation of symptoms

Plaintiff's allegation of legal error is twofold. She claims that the ALJ (1) unreasonably cited her upper body strength as evidence that the pain in her lower extremities was not as severe as alleged, and (2) failed to sufficiently explain his evaluation of her subjective statements about her symptoms. *See* ECF 15-1 at 4-8. "Courts review de novo whether the correct legal principles were applied and whether the legal conclusions made by the ALJ were based on those principles." *Russ v. Commissioner*, 582 F.Supp.3d 151, 157-58 (2022) (citing examples). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (internal citations removed).

#### a. Rules for evaluating symptoms

The procedure for evaluating symptoms is provided in 20 C.F.R. §§ 404.1529 and 416.929, and further explained in SSR 16-3p. The purpose of the evaluation is to determine "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* "Symptoms" means the claimant's "own description of [her] physical or mental impairment." 20 C.F.R. §§ 404.1502(i), 416.902(n).

This assessment follows a two-step framework. *First*, the ALJ evaluates whether there is an underlying medically determinable impairment that could reasonably be expected to produce such a symptom – for example, pain – irrespective of its alleged severity. *Id.* Objective evidence is required at this step, i.e., medical "signs" established by medically acceptable clinical diagnostic techniques or laboratory findings shown by laboratory diagnostic techniques. *Id.* *Second*, if objective evidence reveals an impairment that could cause the alleged symptoms, the ALJ evaluates their intensity and persistence and the extent to which they limit the ability to perform work-related activities. *Id.* At this step, the ALJ considers not only objective medical evidence but also other evidence such as the claimant's own statements, evidence submitted by medical sources including medical opinions, and observations by other persons including agency personnel. *Id.* Additionally, the ALJ considers any of the following factors that are relevant to a particular case: (i) daily activities; (ii) location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (v) treatment, other than medication, received for relief of pain or other symptoms; (vi) measures used to relieve pain or other symptoms; and (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. *Id.* The ALJ then must "explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions." *See* SSR 16-3p.

### b.  Discussion of upper body strength

Plaintiff's first argument – that the ALJ unreasonably cited her upper body strength as evidence that the pain in her lower extremities was not severe as alleged – misapprehends the ALJ's decision. The ALJ did not cite upper body strength in connection with plaintiff's

complaints of lower body pain but, rather, as evidence that plaintiff could meet the "exertional demands" of sedentary work. *See* ALJ Decision at R. 16-17 ("[T]he records [show] no significant clinical deficits in musculoskeletal strength in her upper extremities, upper back, or use of her hands, such that she would be unable to perform the exertional demands of sedentary work."). Sedentary work involves some upper body exertion, including "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a). The ALJ's determination that plaintiff retained sufficient upper body strength to perform these tasks was neither illogical nor legal error. Indeed, because the record included plaintiff's testimony alleging pain in her arms that rendered her unable to even open a bottle of water, *see* R. 44, for which plaintiff consulted with a neurologist, *see* R. 557-564, it was proper under the SSR 16-3p framework for the ALJ to examine inconsistencies between this subjective description and objective evidence in the record and determine whether there was some upper extremity impairment that would preclude her from working. *See* ALJ Decision, R. at 15-17.

### c. The ALJ's explanation was sufficient

Plaintiff next argues that the ALJ failed to address all the SSR 16-3p factors and that his reasoning was opaque. However, neither contention is accurate.

Regarding the factors considered, plaintiff does not identify any factor that the ALJ improperly failed to address or explain how any such claimed omission affected the evaluation. An ALJ need not discuss non-relevant factors, *see Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013), and the ALJ's decision addresses all relevant SSR 16-3p factors – including daily activities, reports of symptoms, aggravating factors, medications, non-medication treatment, and other evidence regarding functional limitations – and addresses all pertinent sources of evidence,

including plaintiff's statements, objective medical evidence, and opinion evidence.  *See* ALJ

Decision, R. at 14-17.

As for the clarity of the ALJ's explanation, the Court finds no legal deficiency.  Of

course, an ALJ's evaluation of symptoms must be sufficiently articulated to permit meaningful

review.  As SSR 16-3p instructs,

> It is [] not enough for our adjudicators simply to recite the factors described in the
> regulations for evaluating symptoms.  The determination or decision must contain
> specific reasons for the weight given to the individual's symptoms, be consistent
> with and supported by the evidence, and be clearly articulated so the individual
> and any subsequent reviewer can assess how the adjudicator evaluated the
> individual's symptoms.

Case law also confirms that where the ALJ discounts the plaintiff's alleged symptoms, the ALJ

must explain that decision with sufficient specificity to permit a reviewing court to decide

whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported

by substantial evidence.  *See McNerney v. Comm'r of Soc. Sec.*, No. 1:18-cv-1073 (TPK), 2019

WL 5558392, at *7 (W.D.N.Y. Oct. 29, 2019) (quoting *Correale-Englehart v. Astrue*, 687 F.

Supp. 2d 396, 435-36 (S.D.N.Y. 2010)); *accord. Wendy C. v. Kijakazi*, No. 3:22-cv-539 (MEG),

2023 WL 2569402, at *5 (D. Conn. Mar. 20, 2023); *cf.*, *e.g.*, *Michael K. A. v. Comm'r of Soc.

Sec.*, No. 6:20-cv-1302 (LEK)(DEP), 2022 WL 4226099, at *6 (N.D.N.Y. Apr. 25, 2022)

(granting motion for remand where, "despite incanting in a conclusory fashion that [the ALJ]

appropriately considered plaintiff's subjective reports, there is no indication of what her

conclusion was, much less the specific reasons underlying that conclusion").

In this case, the ALJ's decision provides sufficient explanation to permit meaningful

appellate review.  The ALJ recited both plaintiff's subjective reports and the objective medical

findings, and then credited plaintiff's complaints to some extent, including as complicated by her

obesity.  However, the ALJ explained that he did not fully credit her testimony regarding the

severity of her pain given her reports to treaters that the conservative therapy was effective and the lack of any objective medical findings or medical opinion evidence to support greater limitations. *See* ALJ Decision at R. 15-16. Furthermore, the ALJ considered both the report of a medical consultative examiner and the medical consultants who reviewed the file at the initial and reconsideration levels, and he adopted the most restrictive of these opinions as to plaintiff's functional limitations and capacity based on corroborating evidence in the treatment record. *See id.* at R. 17. In addition to these articulations of the ALJ's reasoning, there also is a self-evident contrast between plaintiff's testimony concerning the severity of her pain and the findings of medical providers based on exams and imaging studies, which are recited in the decision. *See id.* While the needs of some cases might require an ALJ to draw explicit contrasts between particular points of evidence, the inconsistencies between plaintiff's reports of pain and the "minimal" findings of imaging studies, stable assessments of 4/5 strength and normal range of motion in her lower extremities, and reports of improvement with medication management were sufficiently obvious in this case to require no additional gloss. *See McNerney*, 2019 WL 5558392, at *7 ("There are cases where the contrast between the medical evidence and Plaintiff's testimony is so obvious that the ALJ, by reciting both, has provided an adequate explanation[.]") (citing *Burton v. Berryhill*, 2019 WL 1936726, *8 (E.D.N.Y. May 1, 2019)). In sum, the ALJ's discussion was sufficient to allow the Court to identify and review the ALJ's reasons for partially discrediting plaintiff's testimony without guesswork, and there is no structural legal error. *See*, *e.g.*, *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (remand not warranted where "the ALJ thoroughly explained his credibility determination and the record evidence permits us to glean the rationale of the ALJ's decision"); *Wendy C.*, No. 3:22-cv-539 (MEG), 2023 WL 2569402, at *11 (denying motion for remand where ALJ's evaluation of symptoms addressed the

relevant regulatory factors and provided sufficiently specific reasons to permit meaningful review under the substantial evidence standard).

### 2.  Substantial evidence supports the ALJ's RFC determination

Plaintiff's remaining claim is that the ALJ misconstrued the facts when evaluating plaintiff's symptoms, which resulted in a flawed RFC determination.  The Court reviews this claim under the substantial evidence standard, which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"  *See* 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  It must be "more than a mere scintilla or touch of proof here and there in the record."  *Id.*  If the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position.  *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

The ALJ's determination that plaintiff's pain symptoms were not as intense or persistent as she testified at the hearing is supported by substantial evidence, including objective medical signs, medical assessments, and plaintiff's contemporaneous statements to treating providers.  As summarized in the ALJ's decision and in the fact section above, imaging results of plaintiff's spine were generally normal, with a few "slight" or "minimal" physical changes.  Although a right knee x-ray did show "moderate" osteoarthritis, there was no more than mild loss of strength in any extremity, which undercuts plaintiff's reports of pain.  *See* SSR 16-3p ("For example, an individual with reduced muscle strength testing who indicates that for the last year pain has limited his or her standing and walking to no more than a few minutes a day would be expected to have some signs of muscle wasting as a result.  If no muscle wasting were present, we might

not, depending on the other evidence in the record, find the individual's reduced muscle strength on clinical testing to be consistent with the individual's alleged impairment-related symptoms."). Plaintiff's own contemporaneous reports of severe pain were intermittent; she frequently reported less severe symptoms than described in her testimony; and conservative medication treatment resulted in pain relief and improved functional status. *See* SSR 16-3p ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, . . . we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."); *see also Wascholl v. Saul*, No. 3:19-cv-1281(SALM), 2020 WL 2898824, at *12 (D. Conn. June 3, 2020) ("While conservative treatment alone is not grounds for an adverse credibility finding, the ALJ may take it into account along with other factors.") (quoting *Rivera v. Comm'r of Soc. Sec.*, 368 F. Supp. 3d 626, 646 (S.D.N.Y. 2019)).  As for plaintiff's right arm pain, she reported to the neurologist in March 2021 that it was annoying but not significantly disruptive or disabling.  R. 561.

Notably, the ALJ's evaluation did not wholly discount plaintiff's alleged symptoms but, rather, generally credited her experience of pain in her back, legs, and right arm that is complicated by obesity and adopted the most restrictive medical opinion that she could do no more than sedentary work.  What plaintiff seems to be suggesting is that the ALJ was required to accept her subjective complaints without question, which is not the standard.  *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, 20 C.F.R. § 416.929 . . . but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the

other evidence in the record.").  Here, substantial evidence supports the ALJ's conclusions regarding the persistence and intensity of plaintiff's symptoms and her resulting RFC.

### D.  CONCLUSION

For the reasons set forth above, plaintiff's Motion for Order Reversing the Decision of the Commissioner (ECF 15) is DENIED, and defendant's Motion for Order Affirming the Decision of the Commissioner (ECF 18) is GRANTED.

This is not a recommended ruling.  The consent of the parties allows this magistrate judge to direct the entry of a judgment of the District Court in accordance with the Federal Rules of Civil Procedure.  Appeals can be made directly to the appropriate United States Court of Appeals from this judgment.  *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c).

SO ORDERED, this 30th day of May, 2023, at Bridgeport, Connecticut.

*/s/ S. Dave Vatti*
S. DAVE VATTI
United States Magistrate Judge